Kathleen McCOLLESTER, etc., et al.,
Plaintiffs, Appellees,

v.

The CITY OF KEENE, NEW HAMP-
SHIRE, et al., Defendants,
Appellants.

No. 81–1427.

United States Court of Appeals,
First Circuit.

Argued Oct. 6, 1981.

Decided Jan. 11, 1982.

Eugene M. Van Loan, III., Manchester,
N.H., with whom Wadleigh, Starr, Peters,
Dunn & Kohls, Manchester, N. H., was on
brief, for appellant.

Russell F. Hilliard, Concord, N.H., with
whom Upton, Sanders & Smith, Concord,
N.H., was on brief, for appellees.

Before COFFIN, Chief Judge, CAMP-
BELL, Circuit Judge, WYZANSKI,[*] Senior
District Judge.

WYZANSKI, Senior District Judge.

This appeal from a judgment declaring,
in effect, that the juvenile curfew ordi-
nance of the City of Keene on its face
violates the Fourteenth Amendment raises
the question whether the plaintiff alleged
such a *realistic danger* of sustaining a direct
injury from defendants' enforcement of the
ordinance as to create a "case or controver-
sy" within Article III of the United States
Constitution.

New Hampshire R.S.A. 31:43–a authoriz-
ed the City of Keene, by action of its City
Council, to adopt the substantive provisions
set forth in R.S.A. 31:43–c and the penal
provisions set forth in R.S.A. 31:43–e, –f
and –g as its own municipal law. On July
3, 1980 the Keene City Council did make
such an adoption by an ordinance which is
the target of this suit. By resolutions
passed on July 17, 1980 and February 5,
1981 the Council reduced, but did not other-
wise alter, the coverage of the ordinance.
The relevant part of the July 3, 1980 ordi-
nance as amended[1] requires that "persons
under the age of 16 years not be on any
public street or in any public place after the
hour of 9 o'clock [changed by the February

---

[*] Of the District of Massachusetts, sitting by des-
ignation.

1. We do not quote the full text of the February
5, 1981 amendment (set forth in *McCollester v.*

*City of Keene*, N. H., *514 F.Supp. 1046, 1047–
1048 (D.N.H.1981) for reasons stated in foot-
note 3,* infra.

5, 1981 amendment to between 10 p. m. and 5 a. m.] unless accompanied by a parent, guardian, or other suitable person" [defined in the February 5, 1981 amendment as a "person over the age of 18 years authorized or approved by the child's parent or guardian"].

The minor plaintiff Kathleen McCollester (hereafter called "the plaintiff") and her father brought in the district court on September 29, 1980 this action for injunctive relief and a declaratory judgment against the City of Keene, its mayor, or, its city manager, and its police chief. Suing solely on her own behalf, the plaintiff alleged that the July 3, 1980 ordinance violated her Fourteenth Amendment rights.[2] Jurisdiction was invoked under 28 U.S.C. §§ 1343, 2201 and 2202.

With respect to the plaintiff and the defendants, the record gives us only the following information. When the complaint was filed the plaintiff alleged that she then was "a minor under the age of sixteen years ... residing in Keene" and that the defendants have undertaken to enforce the

ordinance by arrest and prosecution. In their answer the defendants admitted that they "have undertaken to enforce the state statute"—which, as appears from a pretrial conference in the district court, includes the city ordinance.

The district judge delivered an opinion directing that the ordinance be "stricken" and caused the entry of a judgment in accordance with the opinion. We read the judgment as though it declared that on its face the July 3, 1980 ordinance, as amended on July 17, 1980 and February 5, 1981, is invalid under the Fourteenth Amendment (including its incorporation of the First Amendment).

We need consider only whether the plaintiff when she sued on September 29, 1980 [3] had been subjected to a *realistic danger* of sustaining a direct injury as a result of the July 3, 1980 ordinance's operation so that there then was an actual "case or controversy" of a type susceptible of adjudication on its merits by a court established under Article III of the United States Constitution.[4]

---

2. Kathleen's father, the plaintiff Gordon McCollester, alleged that the ordinance also violated his Fourteenth Amendment rights. We do not consider his case because he is subject to the ordinance only if his child is subject to it. If her controversy with the defendants is non-justiciable, so is his controversy with the defendants.

3. It is sufficient to view the situation as it was at the time the plaintiff filed her complaint to see if she then had an actual controversy with the defendants. She would gain nothing by amending her complaint to include the 1981 amendment adopted after she sued. The 1981 amendment did not add to the scope of the ordinance's coverage; on the contrary, it created limitations and exceptions. Thus it did not increase the "realistic danger" to the plaintiff. On the other hand, the defendants were warranted in calling to the district court's and our attention the 1981 amendment for two closely related reasons. It *may* be relevant in showing (1) that when enacted, the July 3, 1980 ordinance had a limited purpose so that, properly construed, it did not endanger the plaintiff and (2) that, if the original 1980 ordinance did present a realistic danger to the plaintiff, the 1981 amendment eliminated or diminished the danger so as to render moot what had been a live controversy. Cf. *DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d

164 (1974), *Steffel v. Thompson,* 415 U.S. 452, 459–460, 94 S.Ct. 1209, 1215–1216, 39 L.Ed.2d 505 (1974) and *Golden v. Zwickler,* 394 U.S. 103, 106, 89 S.Ct. 956, 958, 22 L.Ed.2d 113 (1969). See Powell J. dissenting in *United States Parole Commission v. Geraghty,* 445 U.S. 388, 411, 100 S.Ct. 1202, 1216, 63 L.Ed.2d 479 (1980); 13 C. Wright, A. Miller and E. Cooper, 4 Federal Practice and Procedure § 3533 (1975); Note, The Mootness Doctrine in the Supreme Court, 88 Harv.L.Rev. 373 (1974).

However, inasmuch as we find that even if read without reference to the 1981 amendment, the 1980 ordinance is not shown to have realistically endangered the plaintiff, there is no occasion to consider the 1981 amendment.

4. This jurisdictional issue—having constitutional and not merely statutory dimensions (see *Golden v. Zwickler,* 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969))—is sometimes loosely referred to as one of "standing to sue" (see 13 C. Wright, A. Miller, & E. Cooper, 4 Federal Practice and Procedure §§ 3531, 3532 at p. 239 n.6; Note, The Mootness Doctrine in the Supreme Court, 88 Harv.L.Rev. 373, 376) or—although the timing of the suit is usually less significant than the reality of the danger to the plaintiff—as an issue of "ripeness," (C. Wright, A. Miller, & E. Cooper, *supra,* § 2532 which was apparently affected in part by the

The general principles which govern this case were recently set forth in *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298–299, 99 S.Ct. 2301, 2308–2309, 60 L.Ed.2d 895 (1979):

A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement. *O'Shea v. Littleton*, 414 U.S. 488, 494 [94 S.Ct. 669, 675, 38 L.Ed.2d 674] (1974). But "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough." *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 [43 S.Ct. 658, 663, 67 L.Ed. 1117] (1923); see *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143 [95 S.Ct. 335, 358, 42 L.Ed.2d 320] (1974); *Pierce v. Society of Sisters*, 268 U.S. 510, 526 [45 S.Ct. 571, 69 L.Ed. 1070] (1925).

When contesting the constitutionality of a criminal statute, "it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 [94 S.Ct. 1209, 1215, 39 L.Ed.2d 505] (1974); see *Epperson v. Arkansas*, 393 U.S. 97 [89 S.Ct. 266, 21 L.Ed.2d 228] (1968); *Evers v. Dwyer, supra* [358 U.S. 202] at 204 [79 S.Ct. 178 at 179, 3 L.Ed.2d 222]. When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he "should not be required to await and undergo a criminal

prosecution as the sole means of seeking relief." *Doe v. Bolton*, 410 U.S. 179, 188 [93 S.Ct. 739, 745, 35 L.Ed.2d 201] (1973). But "persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Younger v. Harris*, 401 U.S. 37, 42 [91 S.Ct. 746, 749, 27 L.Ed.2d 669] (1971); *Golden v. Zwickler*, 394 U.S. 103 [89 S.Ct. 956, 22 L.Ed.2d 113] (1969). When plaintiffs "do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible," they do not allege a dispute susceptible to resolution by a federal court. *Younger v. Harris, supra* [401 U.S.] at 42 [91 S.Ct. at 749].

*Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143 n.29, 95 S.Ct. 335, 358 n.29, 42 L.Ed.2d 320 (1974), which *Babbitt* cites, stated that:

Because the decision to instigate a criminal prosecution is usually discretionary with the prosecuting authorities, even a person with a settled intention to disobey the law can never be sure that the sanctions of the law will be invoked against him. Further, whether or not the injury will occur is to some extent within the control of the complaining party himself, since he can decide to abandon his intention to disobey the law. For these reasons, the maturity of such disputes for resolution before a prosecution begins is decided on a case-by-case basis, by considering the likelihood that the complainant will disobey the law, the certainty that such disobedience will take a particular form, any present injury occasioned

use of the term "ripeness" in analogous situations—see *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967) and its citations of 3 Davis, Administrative Law Treatise, c. 21 (1958), Jaffe, Judicial Control of Administrative Action, c. 10 (1965)), or "maturity"—a term used in a Pickwickian sense to emphasize factors most of which have no temporal significance (see *Regional Rail Reorganization Cases*, 419 U.S. 102, 143 n.29, 95 S.Ct. 335, 358 n.29, 42 L.Ed.2d 320 (1974) from which, in the body of this opinion, we later quote extensively). However, a short-

hand indication of the critical characteristics of the issue should stress the "reality" of the danger to the plaintiff, not its "immediacy"— "immediacy" being merely one of the aspects of "reality." *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979). But see *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941) quoted in *Golden v. Zwickler, supra*, 108, 89 S.Ct. at 959). In summary, the test is one of realistic danger to the plaintiff.

by the threat of prosecution, and the likelihood that a prosecution will actually ensue. Compare *Golden v. Zwickler*, 394 U.S. 103 [89 S.Ct. 956, 22 L.Ed.2d 113] (1969), with *Albertson v. SACB*, 382 U.S. 70 [86 S.Ct. 194, 15 L.Ed.2d 165] (1965); *Steffel v. Thompson*, 415 U.S. 452, 459 [94 S.Ct. 1209, 1215, 39 L.Ed.2d 505] (1974).

Even when the plaintiff alleges that the enactment which she challenges is facially invalid under the First Amendment or overbroad or vague, she is not entitled to a declaratory judgment or injunction unless she also alleges that she is subject to a realistic danger of prosecution. *Steffel v. Thompson*, 415 U.S. 452, 473–475, 94 S.Ct. 1209, 1222–1223, 39 L.Ed.2d 505 (1974); *Laird v. Tatum*, 408 U.S. 1, 11–14, 92 S.Ct. 2318, 2324–2326, 33 L.Ed.2d 154 (1972). The aspect of standing involved in the requirement that the plaintiff allege that she is subject to a realistic danger is different from and in addition to the aspect of standing involved in the "invalid on its face" doctrine.

Taking a "case-by-case" approach, and paying due attention to the foregoing quotations without applying them mechanically, we conclude that the plaintiff has not presented a controversy which is justiciable under Article III of the Constitution.

Article III of the Constitution limits federal court jurisdiction to actual "cases or controversies," thus excluding feigned cases. That principle implies that the plaintiff must allege facts showing that she personally is in controversy with the defendant. Hence, a "plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a *direct* injury as a result of the statute's operation or enforcement." *Babbitt, supra*, 442 U.S. at 298, 99 S.Ct. at 2308. (Emphasis added.) She must have a "personal stake in the outcome." *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974).

An allegation as to what the plaintiff personally intends to do is necessary to show that not only she but also her intended conduct are at least plausibly within the potential reach of the statute or ordinance.

That much is implied by the statement in *Regional Rail Reorganization Act Cases, supra*, that the court must consider "the likelihood that the complainant will disobey the law" and "the certainty that such disobedience will take a certain form." 419 U.S. at 143 n.29, 95 S.Ct. at 358 n.29. It is also implied in the sentence in *Babbitt, supra*, which begins "When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute...." 442 U.S. at 298, 99 S.Ct. at 2308.

The complaint in the instant case is inadequate because it fails to allege the conduct in which the plaintiff intends to engage.

Moreover, the complaint is inadequate for another reason. The plaintiff must allege that there is a real risk that she personally will sustain a direct injury from enforcement of the statute. There must exist with respect to her personally a "credible threat of prosecution ... When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible' they do not allege a dispute susceptible to resolution by a federal court." *Babbitt, supra*, 442 U.S. at 298–299, 99 S.Ct. at 2308–2309.

Even where a plaintiff alleges both that a statute or ordinance covers a plaintiff's intended conduct and that the prosecuting officials have enforced that law against others and threaten to continue to enforce the law, it does not automatically follow that the plaintiff has stated a case or controversy. *Boyle v. Landry*, 401 U.S. 77, 80–81, 91 S.Ct. 758, 759–760, 27 L.Ed.2d 696 (1971). See Stewart J. concurring in *Steffel v. Thompson*, 415 U.S. 452, 476, 94 S.Ct. 1209, 1224, 39 L.Ed.2d 505 first paragraph (1974). Whether one takes a strict view of Article III because of a reluctance to extend federal court power to make declarations with respect to a state law which has not yet been applied to the plaintiff, (Justice Black in *Boyle v. Landry, supra*), or one reads expansively Article III and the Declaratory Judgment Act, (Justice Brennan in *Steffel v. Thompson, supra*, and *Regional*

*Rail Reorganization Act cases, supra*), or one takes an intermediate position (Justice White in *Babbitt, supra*, and Justice Stewart in *Steffel v. Thompson, supra*), all agree that there is no case or controversy unless the plaintiff is subject to something more than a speculative risk of prosecution. There must be "a credible threat of prosecution" of the plaintiff personally, *Babbitt, supra*, which means, in the words of Justice Brennan—a justice whose opinion in *Steffel* shows him sympathetic to a broad construction of Article III in connection with complaints seeking a federal court declaratory judgment with respect to the constitutionality of state statutes—a "likelihood that a prosecution will actually ensue." *Regional Rail Reorganization Act Cases, supra.* Cf. *Babbitt*, 442 U.S. at 298–299, 99 S.Ct. at 2308–2309 quoted in the previous paragraph.

In the instant case the complaint alleges merely that the defendants have undertaken to enforce the ordinance by arrest and prosecution. The defendants' answer and their statement at the pre-trial conference show only that they intend to continue to enforce the statute and ordinance. Nothing in those allegations nor the statements, nor the record, nor the previous arrests and prosecutions, shows whether the defendants or the state courts construe the ordinance as a blanket curfew reaching all minors regardless of the conduct of the individual (unless the individual is within an exception specified in the ordinance), or whether they construe it in light of its recitals[5] as covering only conduct which involves a possibility of injury to a third person, or his property, or his nocturnal peace, or some other interest of his, and not covering conduct the only possible adverse effect of which is on the health, safety, or welfare of the plaintiff herself. ·

Particularly where plaintiff completely fails to allege what activity she contemplates, we find it significant that the ordinance, if not textually ambiguous, so clearly manifests a tension between its stated purposes and its literal coverage. We do not imply that in order to meet the requirements of Article III it is always necessary for a plaintiff challenging the constitutionality of a statute to allege specifically how it has been enforced or how the prosecutorial officials threaten to enforce it. We merely hold that where a plaintiff has given no indications of intended conduct and where the avowed purpose of an ordinance could provide a plausible interpretation by local officials that it did not apply to innocuous conduct, she has not shown that there is a *likelihood* of her being prosecuted if all that she alleges or proves is that the ordinance has been applied in ways not disclosed.

Our conclusion that the plaintiff has not alleged a justiciable controversy is supported by *Ellis v. Dyson*, 421 U.S. 426, 431–435, 95 S.Ct. 1691, 1694–1696, 44 L.Ed.2d 274 (1975); *Boyle v. Landry*, 401 U.S. 77, 81, 91 S.Ct. 758, 760, 27 L.Ed.2d 696 (1971); *Golden v. Zwickler*, 394 U.S. 103, 109, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969); *United Public Workers v. Mitchell*, 330 U.S. 75, 90–92, 67 S.Ct. 556, 564–565, 91 L.Ed. 754 (1947). Cf. *Zemel v. Rusk*, 381 U.S. 1, 18–20, 85 S.Ct. 1271, 1281–1282, 14 L.Ed.2d 179 (1965).[6]

There having been, under Article III of the United States Constitution, a want of

---

5. The full recital of reasons for the July 3, 1980 ordinance is as follows:

WHEREAS, there has come to be considerable anti-social activity in Keene, particularly in the downtown area during the evening hours; and
WHEREAS, some of the activity is perpetrated by persons under the age of 16 years, including disorderly conduct, vandalism and similar acts; . . . . . .

6. We need not inquire whether the plaintiff as of today's date has passed her sixteenth birthday and, if so, whether this case, though on appeal, has been mooted. Cf. *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974); *Atherton Mills v. Johnston*, 259 U.S. 13, 15, 42 S.Ct. 422, 66 L.Ed. 814 (1922). See *Preiser v. Newkirk*, 422 U.S. 395, 402, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975); *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974); *Johnson v. City of Opelousas*, 658 F.2d 1065 (5th Cir. 1981).

jurisdiction in the district court to decide the present controversy on its merits, we intimate no view upon the correctness of the district court's holding as to the constitutionality of the City of Keene's juvenile curfew ordinance. The judgment of the district court is reversed, and the case is remanded with direction to enter a new judgment dismissing the complaint for lack of jurisdiction.[7]

*It is so ordered.*

---

7. The form of this direction to the district court follows *Golden v. Zwickler*, 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1949). A mere vacation of judgment which gave the district court power to grant the plaintiff leave to amend the complaint would not emphasize the point that it is incumbent on the plaintiff at the outset of the litigation to allege a case justiciable under the Constitution.