**CITIZENS ACTION COALITION OF INDIANA, INC., James Suddarth, Clark Field, and Alan Zenthoefer, Plaintiffs,**

v.

**Marvin C. WESTFALL, City of Vincennes, Defendants.**

**No. TH 83–166–C.**

United States District Court, S.D. Indiana, Terre Haute Division.

Nov. 22, 1983.

Richard L. Zweig, Michael A. Mullett, Indianapolis, Ind., for plaintiffs.

Miller, Lewis & Miller, Vincennes, Ind., for defendants.

## MEMORANDUM ORDER

BROOKS, District Judge.

This matter reaches the Court on plaintiffs' motion for a preliminary injunction pursuant to Rule 65(a), Federal Rules of Civil Procedure. The Court enters its Findings of Fact and Conclusions of Law on the motion in memorandum form as provided under Rule 52(a), Federal Rules of Civil Procedure.

## FACTUAL SUMMARY

This case focuses on a city ordinance promulgated by the council for the City of Vincennes and enforced by the city clerk-treasurer providing for licensure of persons who canvass households for donations. The ordinance also prohibits such canvassing after sunset. (Specific reference is to Chapter 119, Code of the City of Vincennes. See Appendix.) Plaintiffs contend the ordinance violates First Amendment rights guaranteeing freedom of speech, i.e., that door-to-door solicitation is a protected activity, that the city code is violative of the First Amendment on its face, and that its specific provision for a licensing fee and its specific prohibition of after-sunset soliciting are unconstitutional.

Citizens Action Coalition (hereinafter "CAC"), one of the plaintiffs in this cause, is a non-profit corporation which engages in various legislative, informational and educational activities. The focus of those activities relates to the legislative and administrative functions of state government and the group has been active in the energy/utility field, employment problems, and hazardous waste disposal, among other issues. The generic term to describe the organization's function would be "consumer group." The named individual plaintiffs, James Suddarth, Clark Field, and Alan Zenthoefer, are employees of CAC.

The defendants are Marvin C. Westfall, Vincennes clerk-treasurer, as well as the City of Vincennes. Mr. Westfall's function is to oversee the licensure of individual canvassers, requiring the payment of a Five ($5.00) dollar annual fee.

CAC is funded through the actions of volunteers and employees in making door-to-door solicitations in various cities around the state. The canvassing is presumably an informational function of the organization, including the distribution of various pamphlets and other information about the group. In addition to this informational function, funds also are sought to support CAC's activities. Such a contribution constitutes "membership" in the organization.

It is the general practice of CAC to conduct this canvassing between the hours of 4:00 o'clock and 9:00 o'clock p.m. Testimony by Chris Williams, a CAC employee, indicated this was a customary practice of like groups because a consumer group's appeal is to "working people," persons who likely would not be at home during earlier hours in the day. Canvassers are trained by the organization, including instruction to avoid persistence when a household member refuses the information or indicates an intent not to participate in the group's activities or fund raising.

Mr. Westfall testified that licenses under Chapter 119 have been granted routinely, although he indicated that he might consult the city attorney when in doubt about the

propriety of issuing a license. He stated he would not deny a license on grounds of political affiliation or race. Any complaints received about after-sunset canvassing would be forwarded to the police department, according to Mr. Westfall. He indicated enforcement of the after-sunset prohibition was unlikely should no complaints be made by citizens.

There is no evidence in this record that CAC or any of its volunteers or representatives were issued a permit under Chapter 119 of the Vincennes code. Further, there is no evidence in this record that the code was enforced either by threat of arrest or actual arrest of a party soliciting in Vincennes after sunset.[1] Testimony did reveal the City might be inclined to waive the Five ($5.00) dollar fee; no such offer of waiver, however, was made regarding the after-sunset prohibition.

## I

The basis of this memorandum has not been raised in plaintiffs' brief or oral arguments, and was only lightly touched upon in defendants' presentation to the Court in argument. Yet, the issue on which the Court bases its opinion lies at the heart of the federal judiciary's function. For reasons to be explored in this memorandum, this Court may not rule on plaintiffs' request for injunctive relief. The admittedly fluid concepts of justiciability, abstention, and "Our Federalism" compel this Court to stay its hand in a case too premature to resolve.

As Professor Wright has noted, "There is no more controversial, or more quickly changing, doctrine in the federal courts today than the doctrine of 'Our Federalism,' which teaches that federal courts must refrain from hearing constitutional challenges to state action under certain circumstances in which federal action is regarded as improper intrusion on the right of the state to enforce its laws in its own courts." Wright, *Law of Federal Courts* (3rd Ed.), p. 229 (1976).

The origin of this restraint over federal jurisdiction derives from *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and *Fenner v. Boykin,* 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926). The doctrine expressed in those cases was that United States courts had power to enjoin state officers from instituting criminal actions only "when absolutely necessary for protection of constitutional rights." *Id.* at 243, 46 S.Ct. at 493.

More recent Supreme Court decisions have clarified and focused the role of the federal judiciary, most notably in a group of cases referred to as the *Younger* sextet.[2] The cases dealt, in general, with the appropriateness of federal-court intervention in pending state criminal proceedings. In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), certain plaintiffs were excluded from consideration in the case because they did not claim a criminal prosecution was threatened, likely, or even remotely possible. The Court stated, "[P]ersons having no fears of state prosecution, except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs in such causes." *Id.* at 42, 91 S.Ct. at 749.

*Boyle v. Landry,* 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971), brought the situation presented by the instant case into clearer focus. Appellees in that case

---

1. While the defendants' attorney apparently told CAC representatives the ordinance would be enforced, the evidence at the hearing was that any arrest or prosecution was likely only in the event of citizen complaint. The city attorney's response to the telephone inquiry has no particular bearing here in light of the evidence. Moreover, it is doubtful any city attorney would ever tell a caller that a city ordinance would not be enforced.

2. Principal case: *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The five companion cases were *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); *Boyle v. Landry,* 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); *Dyson v. Stein,* 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); *Byrne v. Karalexis,* 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971). The cases were handed down February 23, 1971.

had brought an action for injunctive and declaratory relief against the enforcement of Illinois statutes under which some of the appellees had been arrested, and which all of them claimed had been used to intimidate them in the exercise of First Amendment rights. The Supreme Court reversed the finding of a three-judge panel which had declared the statutes invalid for overbreadth. The panel also enjoined the enforcement of statutory provisions which it considered intimidating to the plaintiffs but under which no arrest had been made. Justice Black concluded, "It is obvious that the allegations of the complaint in this case fall far short of showing any irreparable injury from threats or actual prosecutions.... Not a single one of the citizens who brought this action had ever been prosecuted, charged, or even arrested (under the challenged statutes)." *Id.* at 80–81, 91 S.Ct. at 760. In the wake of that opinion, federal courts must evaluate the presence of any jeopardy of suffering irreparable injury as well as consider the speculative nature of a plaintiff's claim, even when based on constitutional grounds.

Later cases have expanded and amplified the foundation established in *Younger, Boyle,* and their companions. A different result has been reached by Justice Brennan and a majority of the Court in the application of the Federal Declaratory Judgment Act to these kinds of anticipated prosecutions, *see, Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), but Justice Stewart recalled the *Boyle* decision in a concurring opinion in that case. He clarified the use of declaratory judgment jurisdiction was not an automatic avenue of redress for persons who believe a state criminal law is unconstitutional and who are genuinely "chilled" in their actions by the very existence of such a law. Re-emphasizing and quoting *Younger,* Justice Stewart stated:

> The power and duty of the judiciary to declare laws unconstitutional is in the final analysis derived from its responsibility for resolving concrete disputes brought before the courts for decision.... (cite omitted)

The petitioner in this case has succeeded in objectively showing that the threat of imminent arrest, corroborated by the actual arrest of his companion, has created an actual concrete controversy between himself and the agents of the State. He has, therefore, demonstrated "a genuine threat of enforcement of a disputed state criminal statute...." (citing language in the majority opinion). Cases where such a "genuine threat" can be demonstrated will, I think, be exceedingly rare. *Steffel,* 415 U.S. at 476, 94 S.Ct. at 1224.

It should be clear that the Supreme Court does not countenance the interference of federal courts in cases where the "case or controversy" required in Article III of the Constitution is not apparent.

## II

Among the questions raised in these kinds of cases is whether jurisdiction might arguably exist where, although no prosecution is pending or even quite likely, an individual shows he will be required to forego constitutionally protected activity to avoid arrest. *Steffel,* 415 U.S. at 463 n. 12, 94 S.Ct. at 1218 n. 12. The mandate is clear that when contesting a criminal statute's constitutionality, "it is not necessary that (the plaintiff) first expose himself to actual arrest or prosecution to be entitled to challenge the statute that he claims deters the exercise of his constitutional rights." Id. at 459, 94 S.Ct. at 1216. "When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a *credible threat of prosecution thereunder,* he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'" *Babbitt v. Farm Workers,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895 (1979), citing *Doe v. Bolton,* 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973). (emphasis added). It is this Court's opinion that the record and testimony of the instant case

are devoid of such a "credible threat of prosecution."

The Supreme Court has considered whether the policy of noninterference was in any way affected by the holding in *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), which permitted federal jurisdiction where arrests and threatened prosecutions were alleged to have been made in bad faith. In a subsequent review of this line of cases and reasoning, the Supreme Court stated:

> That case (*Dombrowski*) was thus within the traditional narrow exceptions to the doctrine that federal courts should not interfere with state prosecutions. We acknowledged in *Younger* that it is "'of course conceivable that a statute might be flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it,'" and that such a situation might justify federal intervention (cite omitted). *But we unequivocally held that facial invalidity of a statute is not itself an exceptional circumstance justifying federal interference with state criminal proceedings.* (Emphasis added).

*Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1974). Therefore, the Supreme Court has made clear that hesitation to pursue conduct a person believes to be constitutionally protected, but which he also sincerely believes is prohibited by a statute, is not ample ground to garner a federal court forum. Further, an attack on the facial validity of such a statute is also insufficient to pursue the case in federal court.

There are other offshoot questions. Does mere enforcement authority, that is, when a statute is on the books and is capable of enforcement, create a federal jurisdiction? "[M]ere enforcement authority does not create a case or controversy...." *Supreme Court of Va. v. Consumers Union*, 446 U.S. 719, 736 n. 15, 100 S.Ct. 1967, 1977 n. 15, 64 L.Ed.2d 641 (1980). The quoted portion builds on the theme initiated in *Boyle*. Even if an ordinance has been upheld against other parties, one U.S. Court of Appeals has concluded that fact alone does not give a party against whom the ordinance has not been enforced grounds for federal jurisdiction. "Even where a plaintiff alleges both that a statute or ordinance covers a plaintiff's intended conduct and that the prosecuting officials have enforced that law against others and threaten to continue to enforce the law, it does not automatically follow that the plaintiff has stated a case or controversy. (citing *Boyle* and Justice Stewart's concurrence in *Steffel*)." *McCollester v. City of Keene, N.H.*, 668 F.2d 617, 620 (1st Cir.1982). In summarizing the various Supreme Court opinions on this jurisdiction issue, the First Circuit noted "all agree that there is no case or controversy unless the plaintiff is subject to something more than a speculative risk of prosecution." *Id.* at 621. The opinion noted that even Justice Brennan, who had taken a broad construction of Article III in applying the declaratory judgment jurisdiction of federal courts in *Steffel*, concedes both "a credible threat of prosecution" and a "likelihood that a prosecution will actually ensue" are necessary where criminal statutes are challenged. *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143 n. 29, 95 S.Ct. 335, 358 n. 29, 42 L.Ed.2d 320 (1974). The Second Circuit also has restated the Supreme Court position: "To maintain a pre-enforcement challenge a plaintiff must demonstrate a genuine threat that the allegedly unconstitutional law is about to be enforced against him." *Brache v. County of Westchester*, 658 F.2d 47, 51 (2nd Cir.1981).

In summary, there is ample case law to guide this Court in determining the existence of federal jurisdiction where a statute (or a city ordinance, as in the instant case) is being subjected to a constitutional challenge on its face and an injunction is included in the plaintiffs' prayer for relief.

### III

The testimony in the hearing for a preliminary injunction was that none of the

individual plaintiffs and, in fact, no employee of CAC has been arrested for violating the after-sunset provision of the Vincennes ordinance. Mr. Westfall has testified that no arrests ever have occurred as a result of such a violation, if indeed any violation has occurred. He testified that police officers would be sent to investigate an alleged violation only if a citizen called to complain about an after-sunset solicitation.

 Absent such enforcement, any arrest or prosecution stemming from the ordinance plaintiffs complain of falls into the speculative realm which is insufficient to merit federal jurisdiction. There is no concrete dispute here. The city has not threatened any action against the plaintiff, or at least there is no testimony or affidavit before the Court to that effect. And, even if there was such an accusation, the cases do not permit federal jurisdiction on the basis of mere threats. There must be something more—enforcement in the way of arrests, prosecution or more than an idle threat—to justify a plaintiff's standing in federal court. In short, this case simply is not "ripe" in the sense that no deprivation of a constitutional right alleged to exist in this complaint has yet occurred.

A close examination of cases cited by the plaintiff in support of the requested preliminary injunction reveals fact situations which differ from the instant case, at least insofar as the enforcement of the statutes or ordinances challenged. In *Citizens For a Better Environment v. City of Park Ridge*, 567 F.2d 689 (7th Cir.1975), the court made an initial inquiry into the ripeness issue, even citing the *Boyle* decision:

> [T]he requirement of irreparable harm in the sense of ripeness (citing *Boyle v. Landry* ) is satisfied in this case. CBE alleged that one of its canvassers was arrested under the ordinance ... Although the Park Ridge City Attorney denied that he had ever prosecuted anyone under the ordinance, he did concede that someone might have voluntarily paid the fine and been released without his knowledge. We conclude that CBE has made a sufficient showing that it would suffer irreparable harm from the denial of the preliminary injunction.

Similarly, a clear indication of ordinance enforcement was stated by the authorities in *Citizens, etc. v. Village of Elm Grove*, 462 F.Supp. 820 (D.C.Wis.1978), also cited by CAC in the instant case:

> Since CBE (the plaintiff) has not received an exemption from the solicitation ordinance, the chief of police of Elm Grove has stated ... in his affidavit that members of the CBE canvass staff would be arrested if they conduct a canvass in Elm Grove without a license.

*Id.* at 822.

Clearly, no such threats have been made by Vincennes authorities in this case. Enforcement is likely only if a citizen complains about the after-sunset soliciting. Given CAC's employees' own testimony about the civility and restraint of its soliciting calls on households, there is no compelling likelihood that a citizen would complain to police unless perhaps peculiarly sensitive to either the hour of the visit or the political nature of the canvass.

Finally, in a very recent case cited by CAC, *Association of Community Organization for Reform Now (ACORN) v. City of Frontenac, et al.*, 714 F.2d 813 (8th Cir.1983), a similar ordinance was challenged. Yet, the court noted at pp. 815–816 of the slip opinion, "The parties have stipulated that Frontenac will enforce section 6 (the challenged ordinance banning solicitation after 6:00 o'clock p.m. each day) ... against ACORN workers who canvass during prohibited hours. As a result of the ordinance and its threatened enforcement, ACORN has suspended canvassing activities in Frontenac."

There is no such stipulation and no such suspension of canvassing activities in the instant case. The evidence is that CAC never commenced a canvass. CAC has anticipated trouble and seeks to head it off with the blessing of the federal judiciary. Because it prematurely sought the aid of this Court, it receives no such blessing.

## IV

The foregoing easily applies to CAC's apparent major concern with regard to after-sunset soliciting in Vincennes. Enforcement of that portion of the ordinance resulting in arrest or prosecution almost certainly will open the doors of federal court to the plaintiffs. Absent such a circumstance, or a more credible threat of enforcement, there can be no demonstration of irreparable harm. As to the concurrent complaint about the Five ($5.00) dollar licensing fee, the Court cannot comprehend any irreparable harm sufficient to justify an injunction for such a nominal fee, even if allegedly an unconstitutional tax on the exercise of First Amendment rights. Moreover, the city already has indicated it would grant a waiver of the fee.

For reasons herein stated, the Court DENIES the plaintiffs' motion for a preliminary injunction because it lacks jurisdiction to consider either that extraordinary relief or the merits of the case. As a consequence, the Court, *sua sponte*, also DISMISSES this cause of action for lack of jurisdiction pursuant to provisions in Rule 12, Federal Rules of Civil Procedure.

IT IS SO ORDERED.

## APPENDIX

## CHAPTER 119: SOLICITORS, PEDDLERS, HAWKERS

### § 119.01 Definitions; exception.

(A) *"Solicitor and/or peddler."* Any person who engages in the business of a canvasser or solicitor within the muncipality (sic) by calling at private residences for the purpose of soliciting orders, sales, subscriptions for goods or chattels of any kind, or business of any kind, or seeking donations or information.

(B) *"Exception."* The definition as set out in this section shall not apply to any person under the age of eighteen (18) years who is a student in any school of Knox County, Indiana.

### § 119.02 License required.

No person shall act as a solicitor or peddler as defined in this chapter without first registering at the office of the City Clerk-Treasurer and obtaining a license. The registrant shall give his name, residence address, business address, name of employer, social security number, Indiana State Tax number, nature of the product or services to be offered, the proposed method of operation in the City, the license number and description of any vehicles to be used and any information additionally required by the Clerk-Treasurer or the Chief of the Police Department.

Licenses, when issued, shall be non-transferable and shall be issued for a specific period of time not to exceed one (1) year.

### § 119.03 License fee.

The fee for such license as herein provided shall be the sum of Five Dollars ($5.00) for each person, payable in advance of receipt of the license to the Clerk-Treasurer.

## VINCENNES CODE OF ORDINANCES

### § 119.05

### § 119.04 Soliciting or peddling, proof of registration and hours.

(A) Each solicitor or peddler shall, at all times when soliciting or peddling in the City, carry upon his/her person the license issued by the Clerk-Treasurer and the same shall be exhibited by such registrant whenever he/she is required to do so by any police officer or requested to do so by any person solicited.

(B) Soliciting or peddling shall be permitted only between the hours of 9:00 A.M. and sunset.

### § 119.05 Penalty.

Whoever violates the provisions of this Chapter shall be fined not less than Ten Dollars ($10.00) nor more than One Hundred Dollars ($100.00). Each day's continued violation shall constitute a seperate (sic) offense.